IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MOHAMMAD Z. ALIM,                 §
                                  §
        Plaintiff,                §
                                  §
v.                                §          Civil Action No. 3:11-CV-1746-N
                                  §
KBR, INC.,                        §
                                  §
        Defendant.                §

## ORDER

This Order addresses Plaintiff Mohammad Alim's ("Alim") motion to remand [14],

Defendant KBR, Inc.'s ("KBR") motion to dismiss Plaintiff's claim for violation of Dubai

law [5], and KBR's motion to compel arbitration and stay [8].  For the reasons that follow,

the Court denies Alim's motion to remand, denies KBR's motion to dismiss, grants KBR's

motion to compel arbitration, and grants KBR's motion to stay.  Accordingly, (1) the Court

orders the parties to proceed to arbitration on (a) Alim's breach of contract, breach of

arbitration agreement, and fraud claims and (b) his claim for violation of United Arab

Emirates Federal Law 8, and (2) it stays Alim's claim for violation of Title VII of the 1964

Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*

### I. ORIGINS OF THE SUIT

This case concerns an employment dispute.  KBR hired Alim in 2004, and he worked

in Baghdad, Iraq, and Dubai, United Arab Emirates from 2004 to 2006.  In 2005, Alim

signed an employment agreement with KBR in Dubai which detailed the terms and

conditions of his employment.  This included the Halliburton Dispute Resolution Plan

("DRP").[1]  Specifically, the employment agreement provided:

> In consideration for your employment, . . . you agree that you will be bound
> by and accept as a condition of your employment the terms of the Halliburton
> Dispute Resolution Program which are herein incorporated by reference.  You
> understand that the Dispute Resolution Program requires, as its last step, that
> any and all claims that you might have against Employer related to your
> employment, including your termination, . . . must be submitted to binding
> arbitration instead of to the court system.

Def.'s App. to Mot. Compel & Stay, Empl. Agreement 13 [9-4].  Alim subsequently signed

an "International Assignment Agreement" with KBR which superceded and replaced his

employment agreement.  The new agreement also bound Alim to Halliburton's DRP.  *See*

Def.'s App. to Mot. Compel & Stay, Int'l Assignment Agreement 17 [9-4].  It stated:

> As an employee of Halliburton Company or any of its subsidiary companies
> . . . I agree that any dispute or controversey arising from this agreement or the
> relationship between myself and the Company that cannot be resolved by the
> parties shall be submitted to the Halliburton Dispute Resolution Program,
> incorporated herein.  I also understand that the Company agrees to use the
> Halliburton Dispute Resolution Program to resolve all workplace disputes.
> This includes the requirement that any dispute not resolved through Options
> 1, 2, or 3 of the Halliburton Dispute Resolution Program as explained in the
> booklet provided, be submitted to final and binding arbitration, rather than to
> the courts or to a jury.

*Id.*  The DRP defines "dispute" as

> all legal and equitable claims, demands and controversies, of whatever nature
> and kind, whether in contract, tort, under statute or regulation, or some other
> law, between persons bound by the Plan or by an agreement to resolve
> Disputes under the Plan . . . including, but not limited to, any matters with
> respect to: . . . the employment or potential reemployment of an Employee,

---

[1]During Alim's employment, KBR was a subsidiary of Halliburton Company, and
KBR used Halliburton's DRP and Rules.  *See* Def.'s Mot. Compel & Stay 2 [8].

including the terms, conditions, or termination of such employment with the Company . . . .

Def.'s App. to Mot. Compel & Stay, Halliburton DRP 4 [9-1].[2]

In early July 2006, KBR terminated Alim's employment.  On April 25, 2007, Alim filed an arbitration demand with the American Arbitration Association ("AAA") under the DRP for "discrimination, retaliation, and breach of employment contract."  *See* Pl.'s Demand Arbitration [9-2].  Alim filed a complaint with the AAA (the "AAA Complaint") before his final arbitration hearing.  *See* Pl.'s App. to Pl.'s Mot. Remand, Harold Jones Decl. 4-5 [15].  In the AAA Complaint, Alim claimed breach of contract and employment discrimination, alleging KBR violated Title VII.  *See id.*, Original Compl. 11-12.  The arbitrator, Scott Rosuck, held a two-day arbitration hearing on June 30, 2008 and July 1, 2008.  He subsequently issued an award denying all of Alim's claims.

On December 10, 2008, Alim filed his Original Petition to Vacate Arbitrator's Award (the "Petition to Vacate") in Texas state court, alleging Mr. Rosuck's nondisclosure of his previous dealings with KBR's counsel constituted evident partiality and created an impression of impartiality.  *See* Pl.'s Pet. Vacate [1-5].  KBR filed a cross-motion to confirm the award.  *See* KBR Resp. & Cross-Mot. [1-6].  The state trial court denied Alim's petition to vacate and granted KBR's cross-motion, *see* Order Denying Pet. Vacate [1-16], and Alim appealed.  The Texas Court of Appeals in Dallas vacated the trial court's order and the

---

[2]Alim neither disputes that he signed employment agreements with KBR – which included the DRP – nor disputes the content of the agreements or DRP itself.  *See* Pl.'s Resp. to Def.'s Mot. Compel & Stay [18].

arbitration award and remanded the case back to the trial court, finding that "the arbitrator failed to disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's impartiality." *See Alim v. KBR (Kellog, Brown & Root) – Halliburton*, 331 S.W.3d 178, 180 (Tex. App. – Dallas 2011, no pet.).

On June 23, 2011, Alim filed his Amended Petition in the state trial court. *See* Am. Pet. [2-3]. Alim alleged breach of employment contract, a violation of Dubai labor law (United Arab Emirates ("U.A.E.") Federal Law Number 8),[3] discrimination in violation of Title VII, breach of arbitration agreement, and fraud. *See id.*, at ¶¶ 25-47. KBR answered in state court on July 13, 2011, *see* Def.'s Answer to Pl.'s Am. Pet. [2-4], and it removed the case to this Court on July 22, 2011, *see* Def.'s Notice Removal [1].

## II. THE COURT DENIES ALIM'S MOTION TO REMAND

KBR removed this case pursuant to federal question jurisdiction under 28 U.S.C. § 1331 and § 1441, alleging that Alim raised a removable claim under Title VII for the first time in his Amended Petition. Alim now moves to remand, arguing that KBR's removal was untimely because (1) he first stated a claim under Title VII in his 2008 Petition to Vacate, *see* Pl.'s Mot. Remand 9 [14] and (2) KBR knew before Alim filed his Amended Petition that he was seeking relief under Title VII, *see id.* at 10.[4]

---

[3]Alim couches his claim as one under Dubai labor law, *see* Pl.'s Am. Compl. ¶¶ 29-34; however, the law at issue is United Arab Emirates Federal Law Number 8, discussed more fully below.

[4]Alim concedes that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, does not create federal jurisdiction. *See* Pl.'s Mot. Remand 8-9.

### A. Standards for Removal[5]

*1. General Standards.* – A defendant may remove a state court suit only if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a). Under the removal statute, "any civil action of which the district courts have original jurisdiction[6] founded on a claim or right arising under the . . . laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(a). The Court must determine whether jurisdiction exists by considering the claims in the plaintiff's state court petition as it existed at the time of removal. *E.g.*, *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removing defendant bears the burden of establishing federal jurisdiction. *E.g.*, *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998). However, "[b]ecause removal raises significant federalism concerns, the removal statute is strictly construed[,] and any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (internal quotations omitted).

*2. Timeliness of Removal.* – Defendants have thirty days to remove under the removal statute, 28 U.S.C. § 1446(b):

---

[5]The Court notes that on December 7, 2011, the President signed into law the "Federal Courts Jurisdiction and Venue Clarification Act of 2011" which amended various sections of Title 28 of the United States Code. *See* Pub. L. No. 112-63, 125 Stat. 758 (2011). However, the Court will cite to, and apply, Title 28 as it existed at the time KBR removed and Alim moved to remand.

[6]"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .  If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b).

In essence, the statute provides a "two-step test" to determine whether a defendant timely removed a case.  *Chapman v. Powermatic, Inc.* 969 F.3d 160, 161 (5th Cir. 1992).  Under the first sentence, if the case as stated by the initial pleading is removable, a defendant must remove within thirty days of its receipt of that pleading.  *Id.*  The second sentence applies only to cases not initially removable; it gives a defendant thirty days to remove from its receipt of an amended pleading, motion, order, or other paper "from which the defendant can ascertain that the case is removable."  *Id.*

### B. KBR's Removal Was Timely

Alim contends that he first raised a federal cause of action under Title VII in his Petition to Vacate because that Petition sought to both (1) have the state court vacate the arbitration award and (2) "review the hearing record and determine neutrally the merits of the case" in which the "operative pleading" was Alim's AAA Complaint (containing a Title VII claim).  *See* Pl.'s Mot. Remand 8-9.  He also argues that he pleaded a Title VII claim in his Petition to Vacate because "attachments to [his] Petition to Vacate include[d] an excerpt from the opening statement in the arbitration, [explaining] that the arbitration covered

national origin discrimination and retaliation while working in the Middle East[ – ] . . . a claim [] consistent only with the application of federal law." *See id.* at 9.

However, "subject matter jurisdiction cannot be created by simple reference to federal law;" rather, it "can be created only by pleading a cause of action within the district court's original jurisdiction." *W.H. Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 694 (5th Cir. 1995). A plaintiff's complaint must "affirmatively reveal on its face" such a cause of action in order to trigger the thirty-day removal period under 28 U.S.C. § 1446. *See Chapman*, 969 F.2d at 163 (holding that complaint must affirmatively reveal on its face that amount in controversy in diversity action exceeds federal jurisdictional minimum); *Leffal v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (holding that complaint must affirmatively reveal on its face that plaintiff pleads federal cause of action).[7] Accordingly, several district courts in the Fifth

---

[7]Alim argues that the Court must look to the record as a whole to determine removal jurisdiction, referencing the "artful pleading" doctrine. *See* Pl.'s Mot. Remand 8; Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. Remand 2 [23]. Ordinarily, "[r]emoval is not possible unless the plaintiff's 'well pleaded complaint' raises issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)). Under the well-pleaded complaint rule, "the court will look past the words in the [pleading or motion] to the substance of the claim alleged." *Rozell v. Sec. Servs.*, 38 F.3d 819, 822 (5th Cir. 1994) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983)). This is to prevent a plaintiff from engaging in "artful pleading," or pleading a state law claim or claims to avoid federal jurisdiction where the plaintiff must instead raise his or her claims under federal law. *See, e.g.*, *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 188 (5th Cir. 2001); *W.H. Avitts*, 53 F.3d at 693. Artful pleading is an exception to the settled proposition that a plaintiff is the master of his or her complaint. *See, e.g.*, *Terrebonne Homecare*, 271 F.3d at 188. In practice, courts may consider facts in the record as a whole to determine the propriety of removal when a plaintiff may be engaging in artful pleading. *See Villareal v. Brown Express, Inc.*, 529 F.2d 1219, 1221 (5th Cir. 1976).

However, the artful pleading doctrine is limited to federal statutes which "so

Circuit have rejected the assertion that oblique references to federal causes of action in a plaintiff's complaint or references to Title VII claims in documents attached to a plaintiff's complaint give rise to removal jurisdiction under 28 U.S.C. § 1441. *See, e.g.*, *Hardin*, 2007 WL 2021775, at *1-3 (finding that statement in plaintiff's complaint that she believed her employer discriminated against her in violation of Title VII was merely factual recitation where plaintiff did not specifically plead federal claim and indicated her intent to only plead state law claims); *Maheshwari v. Univ. of Tex.-Pan-Am.*, 460 F. Supp. 2d 808, 811-12 (S.D.

---

completely preempt a particular area[] that any civil complaint raising this select group of claims is necessarily federal." *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *see, e.g.*, *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 551 (5th Cir. 2008); *Terrebonne Homecare*, 271 F.3d at 188. Employment discrimination claims do not involve complete preemption, as a plaintiff may assert both federal and state law claims arising out of the same cause of action or may choose to assert only state law claims. *See Hardin v. Morgan Bldgs. & Spas, Inc.*, 2007 WL 2021775, at *3 (W.D. Tex. 2007) (citing *Christiason v. Merit Tex. Props. L.L.C.*, 393 F. Supp. 2d 435, 437 (N.D. Tex. 2005) (Sanders, J.)); *see also W.H. Avitts*, 53 F.3d at 693 ("[W]hen both federal and state remedies are available, plaintiff's election to proceed exclusively under state law does not give rise to federal jurisdiction."). Accordingly, the artful pleading doctrine is not at issue in this employment discrimination case, and, thus, the Court need not search the record on this ground.

Alim also urges the Court to search the record for a federal claim because he explicitly referenced the arbitration record in his Petition to Vacate. *See* Pl.'s Reply to Pl.'s Mot. Remand 3. To support this proposition, Alim cites this Court's Order in *Sale v. GAB Robbins N. Am., Inc.*, No. 3:10-cv-01720 (N.D. Tex. Sept. 9, 2011) (Godbey, J.) (order denying motion to alter or amend judgment) [25]. The portion of that Order to which Alim cites articulates the Court's motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6). However, Alim's argument is unavailing. As this Court said in *Christiason*,

> [T]he standard for ruling upon a motion to dismiss differs greatly from the standard for ruling upon a motion to remand. In ruling on a motion to dismiss, exhibits attached to the pleadings are properly considered part of the pleading for determining whether a plaintiff has properly plead a federal cause of action. The Court is unaware of any reliance upon the rule in a motion to remand context, . . . [where the issue is] whether plaintiff has necessarily stated a federal cause of action [in his or her pleading].

393 F. Supp. 2d at 436 n.2 (citations and emphasis omitted).

Tex. 2006) (collecting cases and denying plaintiff's motion to remand based on his allegation of untimely removal and holding that plaintiff's references to Title VII and Americans with Disabilities Act in "Conditions Precedent" section of his original complaint did not create removal jurisdiction because these references did not affirmatively state claims under federal law); *Christiason*, 393 F. Supp. 2d at 437-38 ("A mere reference to Title VII violations in Plaintiff's [Equal Employment Opportunity Commission ("EEOC")] charge[] which Plaintiff attached to his Original Petition will not establish federal question jurisdiction . . . ."); *Manzella v. United Parcel Serv. Inc.*, 2002 WL 31040170, at *5 (E.D. La. 2002) (collecting cases and remanding case where plaintiff's petition contained no express reference to Title VII but merely prayed for punitive damages only available under Title VII and where plaintiff had previously filed charge with EEOC); *see also Elliot v. LTD Direct Mktg., Inc.*, 1 F. Supp. 2d 1031, 1032 (D. Ariz. 1997) (remanding case where "[p]laintiffs allege[d] two claims in their complaint, each supported by at least one state law theory of recovery not dependent upon [Title VII]" and stating that "[d]irect or indirect references to Title VII in state causes of action do not transform those claims into federal causes of action").

Here, the connection between the opening statement in Alim's arbitration proceeding and Alim's Petition to Vacate is even more tenuous than connections considered by other courts. Alim did not include any reference to Title VII in any section of his Petition to Vacate; rather, he ambiguously sought only to have the state court "review the hearing record and determine . . . the merits of the case." *See* Pl.'s Pet. Vacate, "Prayer." There is no evidence that Alim attached his AAA Complaint – which asserted a Title VII claim – to his

Petition to Vacate; rather, Alim states only that he referenced the record in arbitration in the Petition. *See* Pl.'s Mot. Remand 9. Furthermore, Alim's counsel's opening statement in the arbitration proceeding – which Alim avers he referenced in an attachment to the Petition to Vacate – did not even explicitly articulate a Title VII claim.[8]

Accordingly, Alim did not raise a removable claim in his Petition to Vacate. Rather, he first raised a removable claim under Title VII in his Amended Petition when he filed that Petition on June 23, 2011. *See* Pl.'s Am. Pet. ¶ 36 (stating "KBR violated Title VII . . . as well as corresponding state law under the Texas Commission on Human Rights Act"). Therefore, KBR's removal, less than thirty days after Alim filed his Amended Petition, was timely, and the Court denies Alim's motion to remand.[9]

### III. THE COURT DENIES KBR'S MOTION TO DISMISS ALIM'S DUBAI LABOR LAW CLAIM

In Alim's Amended Petition, he asserts claims under Dubai labor law, U.A.E. Federal Law Number 8 [hereinafter Federal Law 8]. *See* Pl.'s Am. Pet. ¶¶ 29-34. KBR moves to

---

[8]In her opening at the arbitration proceeding, Alim's counsel said:
Mohammed Alim is my client, and our firm has represented him for about a year and a half now in this dispute. Mr. Alim is Bangladeshi-born, so a Bengali-American, but an American citizen now. And the basis of this claim sounds in three different ways: One is national origin discrimination; one is retaliation for complaining about unfairnesses in the workplace, leading to a final adverse action against him; and then a breach-of-contract action . . . .
Pl.'s Pet. Vacate, AAA Tr. 49 [1-7].

[9]Alim moves for attorneys' fees under 28 U.S.C. § 1447(c) which permits an award of "just costs and any actual expenses, including attorney fees, incurred as a result of improper removal." *See* Pl.'s Mot. Remand 10. Because KBR's removal was proper, the Court denies Alim's motion for attorneys' fees.

ORDER – PAGE 10

dismiss this claim because the Dubai Labor Department, rather than this Court, supposedly has exclusive jurisdiction to decide Alim's claim.  *See* Def.'s Mot. Dismiss 3-4.

### A. Motion to Dismiss Standard

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute," *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)), and should "grant[] [the motion] only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief," *id.* (citing *Home Builders*, 143 F.3d at 1010).[10]  In considering challenges to subject matter jurisdiction, the Court may "make factual findings which are decisive of its jurisdiction."  *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986) ("Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  (citing *Williamson*, 645 F.2d at 413)).  The plaintiff bears the burden of proof in the Rule 12(b)(1) context.  *See Ramming*, 281 F.3d at 161.

_____

[10]Query whether courts should continue to conduct this old school Rule 12(b)(6)-like analysis in light of the Supreme Court's decisions in *Twombly* and *Iqbal*.  *See Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

### B. Standards Governing the Court's Consideration of Foreign Law

United States courts are presumed competent to apply foreign law, *see* Matthew J. Wilson, *Demystifying the Determination of Foreign Law in U.S. Courts: Opening the Door to a Greater Global Understanding*, 46 WAKE FOREST L. REV. 887, 890 (2011), and Federal Rule of Civil Procedure 44.1 governs federal courts' determination of foreign law, *see* FED. R. CIV. P. 44.1; *see also*, *e.g.*, *Randall v. Arabian Am. Oil Co.*, 778 F.2d 1146, 1150 n.4 (5th Cir. 1985). Rule 44.1 provides,

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

FED. R. CIV. P. 44.1. Thus, courts "can turn to expert witnesses who have studied or practiced the foreign law for guidance and direction[, and they] may also rely on English-language or translated books, treatises, statutes, cases, legal aids, and online legal materials to determine the applicable foreign law." Matthew J. Wilson, *supra* at 891.

### C. The Court Has Jurisdiction to Adjudicate Alim's Claim

Article VI of Federal Law 8 provides,

> [I]f the employer, worker or any beneficiary thereof lodges claim concerning any of the rights occurring to any of them under this law, he is required to apply to the concerned Labour Department, and the latter shall call both parties and will take whatever is considered necessary for settlement of dispute between them amicably. But if amicable settlement has not been reached, the said department must refer the dispute to the competent Court within a fortnight from the date of application being submitted to it. The case so referred should be accompanied with a memo giving a summary of the dispute, evidence of both parties and the comments of the Department.

Regulation of Labour Relations, Fed. Law No. 8 of 1980, U.A.E. LABOUR LAW, Ch. 1, Art. 6, *available at* https://www.ilo.org/dyn/natlex/natlex_browse.details?p_lang=en&p_isn=11956 (last updated Feb. 8, 2012) (English translation).    Thus, in the U.A.E., a complaining employee must first take his or her claim to the appropriate labor department, and, if the labor department is unable to facilitate a settlement, it will refer the case to a court.

Here, KBR argues that the Court does not have jurisdiction over Alim's Federal Law 8 claim because Alim's exclusive remedy lies with the Dubai Labor Department.  *See* Def.'s Mot. Dismiss 3 [5].  The Fifth Circuit has addressed precisely this issue.  *See Randall*, 778 F.2d 1146.  In *Randall v. Arabian American Oil Company*, the Fifth Circuit considered an almost identical challenge under Saudi Arabian labor law.  Randall, a Virginia citizen, had worked for the Arabian American Oil Company ("ARAMCO"), an American corporation, in Saudi Arabia.  When he returned to the United States, he brought a dispute in federal district court based on Saudi Arabian labor law.  *Id.* at 1148.  However, the Saudi Arabian labor law gave exclusive jurisdiction to a Saudi Arabian labor commission to settle labor disputes arising in that country.  *See id.* at 1148-49.  The Fifth Circuit reversed the district court's grant of summary judgment in favor of ARAMCO, holding that because the district court had proper diversity jurisdiction over the parties, it had jurisdiction to decide the Saudi Arabian claim.  The court said:

> The exclusive jurisdiction provisions of the [Saudi Arabian] Labor Law cannot deprive a United States District Court of subject matter jurisdiction . . . .  We reject outright the notion  that the law of a foreign country can unilaterally curtail the power of our federal courts to hear a dispute even though the dispute involves rights fixed by the laws of another nation.  Only the

Constitution and the laws of the United States can dictate what cases or controversies our federal courts may hear, and the parties have not directed our attention to any treaties or agreements with Saudi Arabia that would require our courts to refrain from exercising jurisdiction in this case.

*Id.* at 1150.

In the present suit, the Court has jurisdiction over the case pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction.[11] As in *Randall*, the parties have not pointed the Court to any treaties or agreements with Dubai or the U.A.E. that would require the Court to refrain from exercising jurisdiction. Accordingly, Federal Law 8's exclusive jurisdiction provision does not deprive the Court of subject matter jurisdiction over Alim's claim. Thus, the Court denies KBR's motion to dismiss Alim's Federal Law 8 claim.[12]

### IV. THE COURT GRANTS KBR'S MOTION TO COMPEL ARBITRATION AND STAY

---

[11]"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and subject to certain exceptions not applicable here, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a). Here, the Court has original jurisdiction over Alim's federal Title VII claim and supplemental jurisdiction over his claims under Federal Law 8 and for breach of contract, breach of arbitration agreement, and fraud. Neither party disputes that the Court has supplemental jurisdiction over Alim's entire "case or controversy."

[12]The Court notes that "[t]he issue of whether [federal] courts have jurisdiction is readily distinguishable from what law governs this dispute." *Randall*, 778 F.2d at 1150. The Court does not conduct a choice-of-law analysis regarding the substantive law which will ultimately govern each of Alim's claims at this time. However, it notes that choice of law may be an issue at a later date. *See id.* (analyzing choice of law regarding plaintiff's Saudi Arabian labor law claim); *see also Curtis v. Harry Winston, Inc.*, 653 F. Supp. 1504 (S.D.N.Y 1987) (analyzing choice of law regarding plaintiff's Venezuelan labor law claim).

Under Alim's employment agreement and the Halliburton DRP,[13] KBR moves to compel Alim to arbitrate his claims for breach of employment contract, breach of arbitration agreement and fraud, and it moves to stay the action during the pendency of arbitration. Though KBR did not move to compel Alim's Federal Law 8 claim, the Court also considers whether to compel Alim to arbitrate this claim because it denies KBR's motion to dismiss.

### A. Standards for Compelling Arbitration

The FAA, 9 U.S.C. § 1, *et seq.*, governs the validity of arbitration agreements in employment contracts, except for contracts that govern transportation workers. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The FAA manifests a "liberal federal policy favoring arbitration agreements," and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Under the statute, one party to an arbitration agreement may move to compel the other party to arbitrate his or her claims as provided for in the agreement. *See id.*; 9 U.S.C. § 4. One party may also move a court to stay the case pending arbitration, and "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under [an arbitration] agreement, shall on application of one of the parties stay the

---

[13]The relevant arbitration agreement is Alim's International Assignment Agreement, as it superceded and replaced his earlier employment agreement, and it was the operative agreement at the time of Alim's termination. *See* Def.'s App. to Mot. Compel & Stay, Int'l Assignment Agreement 17. Accordingly, when the Court refers to the "arbitration agreement," it is referring to this agreement.

trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.*, 243 F.3d 906, 909 (5th Cir. 2001) ("If the issues in a case are within the reach of [the] arbitration agreement, the district court has no discretion under section 3 to deny the stay." (quoting *Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993))).

    In considering whether to order a dispute to arbitration or to stay a case pending arbitration, "[c]ourts are limited to determinations regarding [1] whether a valid agreement to arbitrate exists[14] and [2] the scope and enforcement of the agreement, including the

---

[14]The FAA "provides that written arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 686 (1996); *see AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011). State law contract principles govern whether the parties formed a valid agreement to arbitrate. *See, e.g.*, *May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004); *Bank One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004); *cf. Doctor's Assocs.*, 517 U.S. at 686-87 ("[S]tate law may be applied if that law arose to govern issues concerning the validity, revocability, and enforcability of contracts generally."). "Thus, [a court may apply] generally applicable contract defenses, such as fraud, duress, or unconscionability, [] to invalidate arbitration agreements . . . ." *Doctor's Assocs.*, 517 U.S. at 687; *Concepcion*, 131 S. Ct. at 1746 (citing *Doctor's Assocs.*, 517 U.S. at 687).
    Alim's employment agreements both include choice-of-law provisions designating Texas law. *See* Def.'s App. to Mot. Compel & Stay, Empl. Agreement 13 ("This Agreement is formed in the State of Texas, and shall be governed by and construed in accordance with the laws of the State of Texas; except that with respect to all matters or disputes related to the validity or enforceability [of the arbitration agreement and the DRP], all issues shall be governed by and construed in accordance with the Federal Arbitration Act."); Def.'s App. to Mot. Compel & Stay, Int'l Assignment Agreement 17 ("This agreement shall be governed by and construed in accordance with the laws of the state of Texas, except as to arbitrability, which will be governed by the Federal Arbitration Act . . . ."). Accordingly, Texas contract law applies.

arbitrability of given underlying disputes under the agreement." *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002) (citations omitted) (motion to compel); *Complaint of Hornbeck*, 981 F.2d at 754 (motion to stay); *see also EEOC v. Waffle House*, 534 U.S. at 289 ("Absent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes subject to arbitration. . . . [N]othing in the [FAA] authorizes a court to compel arbitration of any issues . . . that are not already covered in the agreement.") (citation omitted). In the context of a motion to compel, after a court determines that the parties agreed to arbitrate and that the parties' claims are arbitrable, it may then consider whether "any federal statute or policy renders the claims non arbitrable." *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007) (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004)).

### B. The Court Compels Alim to Arbitrate His Breach of Contract,
### Breach of Arbitration Agreement, and Fraud Claims

In support of its motion to compel, KBR argues that "(1) Alim signed a valid and enforceable agreement to arbitrate,[15] (2) the agreement encompasses Alim's claims against KBR for breach of employment contract[,] breach of arbitration agreement, and fraud, and (3) Alim refuses to honor his obligations under the agreement." Def.'s Mot. Compel & Stay 17. It also alleges that it did not waive arbitration. *See* Def.'s Reply to Def.'s Mot. Compel & Stay 7-9 [22]. The Court agrees.

### 1. The Arbitration Agreement Between Alim and KBR is Valid. – Alim argues that arbitration and arbitrators are "systematically biased against employees,"or unfair, relying in large part on statistical analysis by Dr. Alex Colvin, a lawyer and an associate professor at Cornell University. *See* Pl.'s Resp. to Def.'s Mot. Compel & Stay 4-5; Pl.'s App. to Pl.'s Resp. to Def.'s Mot. Compel & Stay, Dr. Alexander Colvin Aff. ¶ 1 [19]. Alim relies on this assertion to contend that the arbitration agreement is invalid because (1) KBR procured the agreement through fraudulent means – that is, KBR sought the agreement because it knew arbitration would be favorable to it as a corporation, (2) the agreement is substantively unconscionable because arbitration is biased against employees, and (3) the agreement violates public policy because arbitration is inherently biased against employees. *See* Pl.'s Resp. to Def.'s Mot. Compel & Stay 8-13.

─────────────────

[15]Again, Alim neither disputes that he signed employment agreements with KBR – which included the DRP – nor disputes the content of the agreements or DRP itself. *See* Pl.'s Resp. to Def.'s Mot. Compel & Stay.

However, the Court refuses to find the arbitration agreement between KBR and Alim invalid on the grounds that arbitration itself is inherently unfair to employees. Indeed, Congress enacted the FAA in 1925 as a response to judicial hostility toward arbitration. *E.g.*, *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 668 (2012); *EEOC v. Waffle House*, 534 U.S. at 288-89 ("[The FAA's] purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts . . . ."). The Supreme Court has emphasized: "our cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embodying a national policy favoring arbitration.'" *Concepcion*, 131 S. Ct. at 1749 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *see also*, *e.g.*, *CompuCredit*, 132 S. Ct. at 669; *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curiam) ("The Federal Arbitration Act reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985))); *EEOC v. Waffle House*, 534 U.S. at 289; *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24. It has counseled that "generalized attacks on arbitration 'rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants,' and as such, they are 'far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 481 (1989)). Moreover, many courts have held that arbitration agreements between employers and employees, as such, are

ORDER – PAGE 19

not "inherently unfair" to employees.  *See, e.g.*, *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002); *cf. EEOC v. Waffle House*, 534 U.S. at 289 (noting that the FAA covers employment contracts)*; Gilmer*, 500 U.S. at 32-33 (upholding arbitration agreement for claims under the Age Discrimination and Employment Act despite plaintiff's allegations of unequal bargaining power).  If Congress wishes to change the courts' interpretation of arbitration agreements or the types of claims for which arbitration may be used based on scientific studies, it may do so.[16]  However, this Court declines Alim's invitation to invalidate the arbitration agreement between Alim and KBR on the grounds that arbitration and arbitrators generally are inherently biased against employees.[17]  *See Olson v. Am. Arbitration Assoc.*, 876 F. Supp. 850, 852 (N.D. Tex. 1995) (Maloney, J.) (dismissing for failure to state a claim plaintiff's petition wherein she claimed violation of Texas Deceptive Trade Practices Act because AAA and arbitrators, generally, are biased in favor of employers).  Accordingly, the Court finds the arbitration agreement between Alim and KBR valid and enforceable.  *See In re Halliburton*, 80 S.W.3d 566 (finding the Halliburton DRP valid and enforceable despite plaintiff's arguments (1) that the DRP was void for want of consideration – based on the plaintiff's assertion that his promise was illusory because Halliburton adopted the DRP

---

[16]In that vein, the Court notes the "Franken Amendment," discussed below, and Senate Bill S.987 – which Senator Al Franken introduced in the Senate in 2011 but has not yet passed – containing proposed amendments to the FAA.  *See* Arbitration Fairness Act of 2011, S.987, 112th Cong. (2011).  Senate Bill S.987 would limit the arbitrability of consumer disputes and employment disputes.  *See id.*

[17]The Court does not intend this ruling to take any position regarding Dr. Colvin or his research.

during his employment and made it a condition of his continued employment – and (2) that the DRP was unconscionable).

　　*2. The Arbitration Agreement is Broad.* – Alim next argues that the arbitration agreement does not cover his breach of arbitration agreement and fraud claims. *See* Pl.'s Resp. to Def.'s Mot. Stay & Compel 16-17.  The Fifth Circuit has characterized arbitration clauses as either "broad" or "narrow." *See Complaint of Hornbeck*, 981 F.2d at 754; *see also, e.g.*, *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985). "Simply stated, a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause, if the clause is 'broad.' In contrast, if the clause is 'narrow,' arbitration should not be compelled unless the court determines that the dispute falls within the clause." *Sedco, Inc.*, 767 F.2d at 1145 n.10 (quoting *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir.1983)); *see Complaint of Hornbeck*, 981 F.2d at 755.  Broad arbitration agreements "cover[] 'any dispute' between the parties." *Texaco Exploration & Prod. Co.*, 243 F.3d at 909; *Complaint of Hornbeck*, 981 F.2d at 755 (collecting Fifth Circuit cases holding that arbitration agreements containing "any dispute" language are broad).  And a court should resolve any doubts about the scope of an agreement in favor of arbitration. *See, e.g.*, *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25; *Complaint of Hornbeck*, 981 F.2d at 755.

　　Here, Alim and KBR had a broad arbitration agreement.  His arbitration agreement provided: "I agree that *any dispute or controversy* arising from this agreement or the

relationship between myself and the Company that cannot be resolved by the parties shall be submitted to the Halliburton Dispute Resolution Program . . . .  This includes the requirement that *any dispute* . . . be submitted to final and binding arbitration."  Def.'s App. to Mot. Compel & Stay, Int'l Assignment Agreement 17 (emphasis added).  Accordingly, the Court leaves it to the arbitrator to decide whether Alim's breach of arbitration agreement and fraud claims are arbitrable.

### 3. KBR Did Not Waive Its Right to Arbitrate.

– Finally, Alim contends that KBR waived its right to arbitrate.  *See* Pl.'s Resp. to Def.'s Mot. Compel & Stay 13-15.  A court will find waiver when "the party seeking arbitration substantially invokes the judicial process to the detriment of the other party."  *Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584, 588 (5th Cir. 2010) (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)); *see also Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999) (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)).  In addition, "the party opposing arbitration must demonstrate prejudice before [courts] will find a waiver of the right to arbitrate."  *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009) (citation omitted); *see also Mirant*, 613 F.3d at 591.  "To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration,'" *Mirant*, 613 F.3d at 589 (quoting *Forte*, 169 F.3d at 329), and prejudice refers to "delay, expense, and damage to a party's legal position."  *Id.*  Overall, there is a strong presumption against waiver, and the

ORDER – PAGE 22

"party claiming that the right to arbitrate has been waived bears a heavy burden." *Mirant*,

613 F.3d at 588; *see also Forte*, 169 F.3d at 326.

Alim first alleges that KBR waived arbitration because it filed a motion to dismiss

Alim's Federal Law 8 claim. *See* Pl.'s Resp. to Def.'s Mot. Compel & Stay 13. However,

"in order to invoke the judicial process, a party must have litigated the claim that the party

now proposes to arbitrate." *Forte*, 169 F.3d at 328-29. In its motion to compel arbitration,

KBR did not seek to arbitrate Alim's Federal Law 8 claim; indeed, it explicitly exempted this

claim from its motion to compel. *See* Def.'s Mot. Compel & Stay 1 n.1. Accordingly,

KBR's motion to dismiss did not "substantially invoke" the judicial process over his other

claims – breach of contract, breach of arbitration agreement, and fraud.[18]

---

[18]Furthermore, as the Fifth Circuit has noted, "motions to dismiss are not homogeneous." *Mirant*, 613 F.3d at 589 (quoting *Hooper v. Cash Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009)). Motions to dismiss for lack of subject matter jurisdiction, alone, do not substantially invoke the judicial process if they are not addressed to the merits of the parties' claims. *See Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880 (8th Cir. 2001) (finding no waiver where a party sought early dismissal on jurisdictional and quasi-jurisdictional grounds); *cf. Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480-81 (5th Cir. 2009) ("A party waives arbitration by seeking a decision on the merits before attempting to arbitrate." (citing *Miller Brewing Co.*, 781 F.2d at 498)); *Mirant*, 613 F.3d at 589 (finding that three motions to dismiss for failure to state a claim, along with other actions, waived arbitration and suggesting that "a mere perfunctory motion to dismiss" would not necessarily waive arbitration). Indeed, "a motion to dismiss may not be inconsistent with the right to arbitrate; it might be necessary for the defendant to file the motion both to sort out the claims before it can intelligently decide whether to arbitrate and to protect its rights in court if the arguably non-arbitrable claims do turn out to be non-arbitrable." *Mirant*, 613 F.3d at 591-92 (quoting *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir. 1992)).

Moreover, because courts disfavor finding waiver, they usually require a defendant to invoke the judicial process through many actions over a period of time to find that a defendant has "substantially litigated" a claim. *See, e.g.*, *Mirant*, 613 F.3d 584 (defendants waived arbitration where they filed three motions to dismiss directed toward the merits of the

Alim also contends that KBR waived its right to arbitration because it "informed the State district court that it did not care whether litigation resumed in arbitration or court."[19] *See* Pl.'s Resp. to Def.'s Mot. Compel & Stay 14. Alim claims this representation prejudiced him because, relying on it, he filed his Amended Petition in state court rather than going back to arbitration. However, assuming, arguendo, that this is true,[20] it fails to overcome the presumption against waiver.

Three factors bear on the Court's prejudice analysis. *See Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004). These factors are (1) the amount of

---

case and sought a stay of discovery pending the court's resolution of their final motion to dismiss on the merits); *Williams v. Cigna Financial Advisors*, 56 F.3d 656, 661 (5th Cir. 1995) (finding no waiver where defendant "removed the action to federal court, filed a motion to dismiss, filed a motion to stay proceedings, answered [plaintiff's] complaint, asserted a counterclaim, and exchanged Rule 26 discovery" and comparing defendant's conduct to that in *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir.1986), where "the [C]ourt found that a waiver had occurred where [the defendant] initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, delayed seventeen months, and caused the other side to incur attorney's fees") (internal quotations omitted); *Dustrol, Inc. v. Champagne-Webber, Inc.*, 2001 WL 1326477, at *8 (N.D. Tex. 2001) (Fish, J.) (collecting cases where the Fifth Circuit did not find waiver despite defendants' participating in litigation to a greater degree than in this case).

Here, KBR did not ask the Court to rule on the merits of Alim's Federal Law 8 claim, but rather moved to dismiss it on the ground that only the Dubai Labor Department could hear the claim. *See* Def.'s Mot. Dismiss 3-4. KBR also only filed one motion to dismiss – on the same day it removed the case. *See id.*

[19]Alim also alleges that KBR is estopped from seeking arbitration for this reason. *See* Pl.'s Resp. to Def.'s Mot. Compel & Stay 15-16.

[20]KRB disputes this assertion and alleges that "KBR's counsel did state that KBR would not seek to compel arbitration of Alim's claims brought in the original arbitration if Alim agreed that no more discovery was needed." Def.'s Reply to Def.'s Mot. Compel & Stay 9.

pretrial activity related to arbitrable claims, (2) the time and expense incurred by a party opposing arbitration in defending against the litigation efforts of a party attempting to compel arbitration, and (3) a party's delay in asserting its right to arbitrate. *See id.*; *see also*, *e.g.*, *MC Asset Recovery, LLC v. Castex Energy, Inc.*, 2009 WL 900745, at *4 (N.D. Tex. 2009) (Means, J.); *Mitsui & Co., Ltd. v. Delta Brands, Inc.*, 2005 WL 1214603, at *7 (N.D. Tex. 2005) (Ramirez, Mag. J.). Here, there has been almost no pretrial activity, save Alim's motion to remand and KBR's motion to dismiss Alim's Federal Law 8 claim. To the Court's knowledge, the parties have engaged in no discovery since the original arbitration. Alim's expense in preparing a three-page response to Alim's motion to dismiss is likely not large. *See* Pl.'s Resp. to Def.'s Mot. Dismiss [17]. And KBR moved to compel arbitration on the same day it removed the case to this Court – July 22, 2011 – after it had done no more than answer Alim's Amended Petition in state court. Furthermore, Alim was presumably going to file his Amended Petition in almost exactly the same form in arbitration as he did in state court. Accordingly, the Court concludes that KBR's motion has not prejudiced Alim.

Therefore, because the arbitration agreement is valid, Alim's breach of employment contract, breach of arbitration agreement, and fraud claims fall within the agreement, and KBR did not waive its right to compel arbitration, the Court orders the parties to arbitrate Alim's breach of employment contract, breach of arbitration agreement, and fraud claims pursuant to the FAA, 9 U.S.C. § 4.[21]

---

[21]Alim makes two more arguments that the Court briefly addresses. First, he argues that KBR's actions in seeking to enforce the arbitration agreement as to his breach of contract, breach of arbitration agreement, and fraud claims are "inconsistent with the Franken

### C. The Court Compels Alim to Arbitrate His Federal Law 8 Claim

KBR did not move to compel arbitration of Alim's Federal Law 8 claim because of

its pending motion to dismiss that claim. *See* Def.'s Mot. Compel & Stay 1, n.1. However,

because (1) the Court denies KBR's motion to dismiss Alim's Federal Law 8 claim; (2) it

finds the arbitration agreement between Alim and KBR to be "broad," encompassing "any

dispute" between the parties; and (3) KBR did not waive arbitration of Alim's Federal Law

8 claim with its motion to dismiss that claim, *see supra* note 18; the Court compels Alim to

arbitrate his Federal Law 8 claim. The arbitrator can then decide whether Alim's Federal

Law 8 claim falls within the arbitration clause. *See Sedco, Inc.*, 767 F.2d at 1145 n.10.

### D. The Court Stays Alim's Breach of Contract, Breach of Arbitration Agreement, Fraud, and Federal Law 8 Claims

KBR moved to "stay this case pending . . . arbitration" pursuant to the FAA, 9 U.S.C.

§ 3, Def.'s Reply to Def.'s Mot. Compel & Stay 10; *see also* Def.'s Mot. Compel & Stay 17.

---

Amendment." *See* Pl.'s Resp. to Def.'s Mot. Compel & Stay 13-14. Alim suggests that the parties' entire agreement is invalid because it would include Title VII claims. The Court does not read the Franken Amendment this way. The Amendment merely exempts Title VII claims from arbitration. *See* Department of Defense Appropriations Act of 2010, Pub. L. 111-118, § 8116(a), 123 Stat. 3409, 3454 (2009). Accordingly, Alim's argument is without merit.

Second, Alim argues that KBR is estopped from arbitrating his claims because of "its misconduct in failing to disclose its contacts with the previous arbitrator." *See* Pl.'s Resp. to Def.'s Mot. Compel & Stay 15-16. However, the Texas appellate court did not find that KBR had engaged in any misconduct in the previous arbitration. *See Alim v. KBR*, 331 S.W.3d 178, 180 ("We conclude the *arbitrator* failed to disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." (emphasis added)). Furthermore, Alim's argument mirrors his "breach of arbitration agreement & fraud" claim in his Amended Petition, *see* Pl.'s Am. Pet. ¶¶ 40-47, and the Court declines to decide the merits of Alim's substantive claim here.

ORDER – PAGE 26

A stay under the FAA is not discretionary.  Rather, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall[,] on application of one of the parties[,] stay the trial of the action until such arbitration has been had."  9 U.S.C. § 3; *Texaco Exploration & Prod. Co.*, 243 F.3d at 908.  Thus, if a court determines that a claim falls within the parties' arbitration agreement, it must stay that claim and allow an arbitrator to decide whether the agreement covers that claim.  *See, e.g.*, *Complaint of Hornbeck*, 981 F.2d at 754-55; *Texaco Exploration & Prod. Co.*, 243 F.3d at 908.

The Court has determined that Alim's breach of contract, breach of arbitration, fraud, and Federal Law 8 claims fall within the parties' broad arbitration agreement, and it has compelled Alim to arbitrate these claims.  Accordingly, the Court stays these claims pending arbitration pursuant to the FAA, 9 U.S.C. § 3.

### E. The Court Stays Alim's Title VII Claim

KBR did not move to compel Alim to arbitrate his Title VII claim in light of a provision of the Department of Defense Appropriations Act of 2010 – commonly referred to as the "Franken Amendment" – which prohibits agreements requiring employees to submit any Title VII claims to arbitration as a condition of employment.  *See* Def.'s Mot. 9.  The "Franken Amendment" provides:

> None of the funds appropriated or otherwise made available by this Act may be expended for any Federal contract for an amount in excess of $1,000,000 that is awarded more than 60 days after the effective date of this Act, unless the contractor agrees not to:

(1) enter into any agreement with any of its employees or independent contractors that requires, as a condition of employment, that the employee or independent contractor agree to resolve through arbitration any claim under title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention; or

(2) take any action to enforce any provision of an existing agreement with an employee or independent contractor that mandates that the employee or independent contractor resolve through arbitration any claim under [T]itle VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention.

Department of Defense Appropriations Act of 2010, Pub. L. 111-118, § 8116(a), 123 Stat. 3409, 3454 (2009). The Court agrees that the Franken Amendment governs Alim's Title VII claim, and therefore the Title VII claim is nonarbitrable. *Cf. In re Gandy*, 299 F.3d at 494-95 (noting that a congressional command may override a stay under the FAA). The Court also finds this claim easily severable from Alim's breach of employment contract, breach of arbitration agreement, fraud, and Federal Law 8 claims. *See Wick v. Atl. Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979) (holding that a court may proceed to adjudicate nonarbitrable claims that are "easily severable" under the FAA).[22] Accordingly, it does not compel Alim to arbitrate his Title VII claim.

_____

[22]The Court notes that "[t]he preeminent concern of Congress in passing the FAA was to enforce private agreements into which the parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation." *Tristar Fin. Ins. Agency v. Equicredit Corp. of Am.*, 97 Fed. App'x 462, 466 (5th Cir. 2004); *see Moses H. Cone Mem. Hosp.*, 460 U.S. at 20 ("[T]he relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement.") (emphasis in original).

ORDER – PAGE 28

However, because, if Alim prevails, his possible damages under the arbitrable claims could offset any possible damages from his Title VII claim, the Court stays Alim's Title VII claim pending the resolution of the parties' arbitration.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.") (citations omitted).  Nonetheless, the Court will not stay the case for an "indefinite duration," *see, e.g.*, *id.* at 257, and Alim may move to lift the stay after a reasonable time.

## CONCLUSION

The Court denies Alim's motion to remand, denies KBR's motion to dismiss, grants KBR's motion to compel arbitration, and grants KBR's motion to stay.  Accordingly, the Court (1) orders the parties to proceed to arbitration on Alim's breach of contract, breach of arbitration agreement, and fraud claims and (2) stays Alim's violation of Federal Law 8 claim and his Title VII claim.


Signed March 15, 2012.



David C. Godbey
United States District Judge