IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MOHAMMAD ALIM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-1746-N |
| | § | |
| KBR, INC., | § | |
| | § | |
| Defendant. | § | |

# ORDER

This Order addresses Plaintiff Mohammad Alim's motion to vacate an arbitration award [Doc. 30] and Defendant KBR, Inc.'s ("KBR") motion for summary judgment [32]. The Court denies Alim's motion to vacate and grants KBR's motion for summary judgment.

## I. ALIM'S TERMINATION, HIS CLAIMS AGAINST KBR, AND THE PARTIES' ARBITRATIONS

The Court presumes the parties are familiar with the underlying facts of this dispute, which the Court recounted elsewhere. *See* Order, March 15, 2012 [hereinafter March 2012 Order]. The Court therefore discusses only the facts relevant to the motions presently under consideration. Alim is a United States citizen who was born in Bangladesh. He worked for KBR in Baghdad and later in Dubai. KBR terminated Alim in 2006.

After his termination, Alim filed an arbitration demand with the American Arbitration Association (the "AAA") for discrimination, retaliation, and breach of his employment contract. He filed a complaint with the AAA before his final arbitration hearing. After the

ORDER – PAGE 1

hearing, Arbitrator Scott Rosuck issued an award denying all of Alim's claims (the "AAA Award").

Alim subsequently filed suit in Texas state court to vacate the AAA Award on the ground that Arbitrator Rosuck had not disclosed certain previous dealings with KBR. The state trial court denied Alim's petition to vacate and granted a cross-motion by KBR to confirm the award. A state appeals court subsequently vacated that order and remanded the case to the trial court. Alim then amended his petition, asserting claims for breach of his employment contract, violation of United Arab Emirates ("UAE") Federal Law 8, violation of Title VII, breach of the parties' arbitration agreement, and fraud. KBR then removed the case to this Court.

This Court determined that Alim's breach of contract, Federal Law 8, breach of arbitration agreement, and fraud claims fell within the parties' arbitration agreement. It therefore compelled Alim to arbitrate these claims. *See* March 2012 Order. Alim elected to pursue arbitration with JAMS. He asked that JAMS provide him with contact information for representatives of parties in JAMS arbitrators' six previous cases (the "Contact Information") in order to aid them with selection of an arbitrator. JAMS refused. The JAMS arbitrator, the Hon. Glen Ashworth, ultimately issued an award in KBR's favor (the "JAMS Award"). Alim now moves this Court to vacate the JAMS Award, and KBR moves for summary judgment.

## II. THE COURT DECLINES TO VACATE THE JAMS AWARD

### A. *The Parties Had a Valid Agreement*

***1. The Arbitration Agreement Was Not Fraudulently Procured.*** – Alim first argues that the parties did not enter into a valid arbitration agreement. He asserts that the agreement the parties signed, which provided for arbitration (the "Arbitration Agreement"), is void on account of fraud, mistake, or prior breach. His first rationale for that conclusion is his contention that arbitration is, in general, statistically biased in favor of employers. To support this rationale, he points to the work of Dr. Alexander Colvin. The Court, however, has already considered this issue and concluded that the Arbitration Agreement is valid. *See* March 2012 Order 18–21; *see also Diggs v. Citigroup, Inc.*, No. 3:12-CV-1612-L, 2013 WL 124110, at *2–3 (N.D. Tex. Jan. 8, 2013) (rejecting argument that, based on Dr. Colvin's work, arbitration agreement was unenforceable). Alim has produced no evidence indicating that the specific arbitration process employed by KBR is biased. The Court therefore declines to reconsider this decision.

***2. The Arbitration Agreement Covered Alim's UAE Law Claim.*** – Alim also seeks to vacate the JAMS award as to the Federal Law 8 claim. He argues that the parties never agreed to arbitrate that claim. The Court, however, has addressed this issue as well, concluding that the parties' Arbitration Agreement is broad and encompasses Alim's claim

under Federal Law 8. *See* March 2012 Order 21–22, 26. The Court declines to disturb this conclusion, too.[1]

### B. Alim Has Not Demonstrated That the JAMS Award Should Be Vacated

Judicial review of an arbitration award is "exceedingly deferential." *Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*, 687 F.3d 671, 674 (5th Cir. 2012). The FAA, which expressly governs the Arbitration Agreement, provides only a few grounds on which a court may vacate an award. *See* 9 U.S.C. § 10(a). Alim invokes two of these grounds: (1) an evidently partial or corrupt arbitrator, and (2) procurement of an award by corruption, fraud, or undue means. *See id.* "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). A reviewing court must resolve all doubts in favor of upholding the award. *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 385 (5th Cir. 2004).

***1. The JAMS Arbitrator Was Not Evidently Partial.*** – The Fifth Circuit has noted that "'evident partiality' conveys a stern standard." *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278, 281 (5th Cir. 2007) (en banc). An arbitrator's

---

[1]Alim cites several cases in which courts have refused to enforce unfair arbitration agreements. *See Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999); *Tri-Star Petroleum Co. v. Tipperary Corp.*, 107 S.W.3d 607 (Tex. App. – El Paso 2003, pet. denied). In all of these cases, however, the employers instituted unfair systems. Again, Alim has introduced no evidence that the particular arbitration procedure KBR uses is unfair. Dr. Colvin's statistical testimony as to arbitration in general is not sufficient to condemn KBR's system in particular.

nondisclosure of information may be relevant to the question of evident partiality, but "nondisclosure alone does not require vacatur of an arbitral award for evident partiality." *Id.* at 282. Rather, "[a]n arbitrator's failure to disclose must involve a significant compromising connection to the parties." *Id.* at 282–83. Alim's contention that Arbitrator Ashworth was evidently partial rests on two bases: (1) Dr. Colvin's research about arbitration generally, and (2) the failure of JAMS to provide certain information about Arbitrator Ashworth.

As a threshold matter, the Court concludes that Alim waived this argument. "A party seeking to vacate an arbitration award based on an arbitrator's evident partiality generally must object during the arbitration proceedings. Its failure to do so results in waiver of its right to object." *Dealer Computer Servs., Inc. v. Michael Motor Co.*, 485 F. App'x 724, 727 (5th Cir. 2012) (unpub.), *cert. denied*, 133 S. Ct. 945, 184 (2013) (citing *Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 732 (5th Cir. 1987)). Alim has pointed to no evidence that he raised either argument in front of Arbitrator Ashworth.[2] His counsel did discuss the matter of JAMS's disclosures, or lack thereof, with JAMS personnel, but Alim points to no evidence that he raised either matter in front of Arbitrator Ashworth. *See id.* ("Even when a neutral arbitrator is challenged for evident partiality, the issue is deemed waived unless the objecting party raised it *to the arbitration panel*.") (quoting *Delta Mine Holding Co. v. AFC Coal Props., Inc.*, 280 F.3d 815, 821 (8th Cir. 2001)) (emphasis added). Furthermore, the record demonstrates that Alim knew about these issues before the arbitration hearing. The study from Dr. Colvin that Alim cites dates from 2009, as does Colvin's affidavit that

---

[2]Alim effectively concedes this point by not responding to it directly.

ORDER – PAGE 5

accompanies his study. *See* Pl.'s App. Supp. Mot. Vacate [31] 7, 17. And, given the uncontested time frame, Alim certainly knew about JAMS's unwillingness to disclose the Contact Information Alim requested before the arbitration began. Because Alim was aware of both grounds on which he now asserts Arbitrator Ashworth was evidently partial before the arbitration hearing, and because he failed to raise those grounds in front of Arbitrator Ashworth, the Court deems these arguments waived.

The Court notes, moreover, that if it were to address the issue it would find that Alim has not shown that Arbitrator Ashworth was evidently partial. Alim's first argument, Dr. Colvin's study, is irrelevant: it provides no information about Arbitrator Ashworth himself. As to the second, the matter of disclosure, Arbitrator Ashworth's disclosed his connections with KBR and its former parent company, Halliburton. Alim's concern is that JAMS did not reveal the contact information of representatives of parties who took part in Arbitrator Ashworth's recent proceedings. But Alim has not identified any case or law that requires the disclosures he sought. He points to certain due process protocols incorporated into JAMS's policies, but these protocols only *recommend* that the contacts be provided – they do not require it. *See* Pl.'s App. Supp. Mot. Vacate 44. The Court concludes that JAMS's failure to provide this information does not rise to the level of evident partiality. Given Arbitrator Ashworth's disclosures, his failure to provide this information was not significantly compromising. Arbitrator Ashworth, in sum, was not evidently partial.[3]

---

[3]Alim also discusses a case involving vacatur of an award issued by a different JAMS arbitrator on account of that arbitrator's allegedly partial actions. It is not clear whether Alim argues that this case shows evident partiality by Arbitrator Ashworth. If this is indeed his

The Court, then, concludes that Alim waived his claim that Arbitrator Ashworth was evidently partial. Furthermore, if the Court were to address this claim, it would conclude that the vacatur is not appropriate on this grounds.

***2. The Award Is Not Tainted by Fraud or Undue Means.*** – The FAA does not define fraud or undue means, but "courts interpret the terms together." *In re Arbitration Between Trans Chem. Ltd. & China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 304 (S.D. Tex. 1997), *aff'd sub nom. Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 161 F.3d 314 (5th Cir. 1998). To succeed in vacating an arbitration award based on fraud, (1) the movant must establish the fraud by clear and convincing evidence; (2) the fraud must not have been discoverable upon the exercise of due diligence before or during the arbitration; and (3) the person challenging the award must show that the fraud materially related to an issue in the arbitration. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004). The same test applies to undue means. *See Morgan Keegan & Co., Inc. v. Garrett*, 495 F. App'x 443, 447 (5th Cir. 2012) (unpub.) (citing *Trans Chemical* court's use of same three-part test for fraud and undue means). Alim argues that the JAMS Award was procured fraudulently or through undue means because (1) the Arbitration Agreement itself was so procured, (2) JAMS declined to reveal the Contact Information, and (3) Arbitrator Ashworth based his ruling as to overtime pay on false or perjured testimony.

---

argument, the Court deems it waived for failure to bring the issue to Arbitrator Ashworth's attention despite Alim's knowledge of the other case. Moreover, the case Alim cites has no bearing on Arbitrator Ashworth or the facts of this action.

The Court has already addressed the first two of Alim's arguments above, and it rejects them here for the same reason. As to the third issue, Alim asserts that certain testimony that KBR properly compensated Alim for his overtime work was false. During the arbitration hearing, Alim requested time to obtain paycheck stubs to demonstrate that he was not paid 1.25 or 1.5 times his normal hourly rate for his overtime work in Dubai, but Arbitrator Ashworth denied his request. KBR, though, points out that Alim himself testified that he was paid for all the hours he worked. Def.'s App. Supp. Resp. Pl.'s Mot. Vacate [36-1], at 11. KBR also notes that Alim had access to the pay stubs in question before the arbitration. Alim disputes neither of these facts. Given his testimony and access to the pay stubs, Alim has not provided clear and convincing evidence that KBR committed fraud or used undue means to procure the JAMS Award. Moreover, Alim could have averted any alleged "fraud" by using pay stubs that were in his possession before Arbitrator Ashworth denied his request for discovery of the pay stubs. The Court concludes, therefore, that the award was not procured by fraud or undue means.

### C. Conclusion as to the Arbitration Award

The parties had a valid and enforceable agreement to arbitrate. Pursuant to that agreement, Arbitrator Ashworth issued an award in KBR's favor. Alim has not shown that vacatur of that award is appropriate under the FAA. The Court therefore declines to vacate the JAMS Award.

### III. THE COURT GRANTS SUMMARY JUDGMENT TO KBR ON ALIM'S TITLE VII CLAIMS

Because the Court upholds Arbitrator Ashworth's award, the only claims remaining in this case are those Alim asserts under Title VII for discrimination based on national origin and retaliation. KBR is entitled to summary judgment on both of these claims.

#### A. *Standard for Summary Judgment*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When the movant bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to

ORDER – PAGE 9

establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. Alim Has Not Proved His Discrimination Claim[4]

***1. Standard of Review for Claims of Discrimination Based on National Origin.*** – The *McDonnell Douglas* burden-shifting framework governs claims for discrimination based on national origin under Title VII. *See Panlilio v. Dallas Indep. Sch. Dist.*, 643 F.2d 315, 317 (5th Cir. 1981). First, a plaintiff must establish a prima facie claim for discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under

---

[4]The Court cannot discern the exact contours of Alim's Title VII claims from the pleadings in the case and the briefing of this motion. Out of an abundance of caution, the Court concludes that Alim asserts three claims: one for discrimination, one for a hostile work environment, and one for retaliation.

nearly identical circumstances. *See Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Second, if the plaintiff is successful, the burden of production – but not the burden of proof – shifts to the defendant, which must proffer a legitimate, nondiscriminatory reason for the challenged employment action. *Lee*, 574 F.3d at 259 (5th Cir. 2009) (citing *McDonnell Douglas*, 411 U.S. at 802). Third, if the defendant articulates a legitimate, nondiscriminatory reason, the plaintiff must show that (1) the defendant's reason is not true, but is instead a pretext for discrimination; or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

***2. Alim Has Not Made out a Prima Facie Case of Discrimination.*** – Alim's prima facie case as to this claim fails because he has not presented evidence of similarly situated employees of different national origins who received better treatment than he did. Alim was a purchasing specialist at KBR working in Dubai. The summary judgment record reveals that KBR considered Alim to be an average employee, that he had little leadership potential, and that because he was an expatriate he was far more expensive to employ than a local worker trained to do the same job. Alim has introduced no summary judgment evidence suggesting that another expatriate employee of a different national origin with an average performance record was treated any differently than he was. He alleges that three KBR

ORDER – PAGE 11

employees were "probably incompetent" or "average" in their positions. This argument fails most obviously because he has no summary judgment evidence to substantiate this allegation. The record contains no evidence of these other employees' employment reviews or of what KBR though of their performance. Moreover, the three employees were (1) a human resources manager, (2) a senior manger of procurement, and (3) the manager of KBR's Dubai procurement center. None of these employees, then, was situated similarly to Alim. *See Sagaral v. Wal-Mart Stores Tex. LP*, 516 F. Supp. 2d 782, 799 (S.D. Tex. 2007) (finding two employees were not similarly situated where, among other things, one was supervisor and one was not). Without evidence that KBR treated another, similarly situated employee better than it treated him, Alim cannot make out a prima facie case of discrimination.

   ***3. KBR Has Introduced Legitimate Reasons for Alim's Discharge.*** – Even if Alim had made out his prima facie case, KBR has proffered three legitimate, nondiscriminatory reasons for terminating him. First, it pointed out that it considered him to be an average employee when compared with local workers. Def.'s App. Supp. Mot. Summ. J. [34] 53. Second, KBR demonstrated that it believed Alim to have little leadership potential. *Id.* at 48. Finally, it showed that Alim, as an expatriate, was six times more expensive to employ than a local worker would have been. *Id.* at 47, 69. Cost is a legitimate, nondiscriminatory reason for an employer to take an adverse employment action. *See, e.g.*, *Ballou v. Mabey*, 124 F. App'x 236, 239–40 (5th Cir. 2005) (unpub.). In this case, cost appears to have been a critical – if not the critical – consideration. Based on the summary judgment record, then, KBR concluded that it could save a great deal of money by replacing an average, expensive worker

ORDER – PAGE 12

who had little leadership potential with a cheaper one. The Court concludes that this evidence is sufficient to meet KBR's burden of providing a legitimate, nondiscriminatory reason for Alim's discharge.

   ***4. Alim Has Not Shown Pretext or Mixed Motive.*** – To carry his burden to show pretext, Alim "must put forward evidence rebutting each of the nondiscriminatory reasons" KBR provided. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). As to the first reason, his of job performance, Alim does not dispute that KBR considered him "very average." Pl.'s Resp. Br. [40], at 10. He does point out that KBR did not warn Alim that his average performance could cost him his job and that KBR did not formally document any of Alim's performance problems. But Alim has not shown that such warnings and formal documentation of problems are necessary, and neither Title VII nor relevant case law of which the Court is aware requires them. Finally, he notes that he received an evaluation indicating that he met expectations. But a rating of "meets expectations" and an evaluation of "average" are not mutually exclusive. Moreover, a single positive evaluation does not establish pretext. *See Zimmerman v. Gruma Corp.*, No. 3:11-CV-01990-L, 2013 WL 3154118, at *17 (N.D. Tex. June 21, 2013) ("[T]he court is unconvinced that Zimmerman's termination despite good performance reviews creates a fact issue as to pretext.").

   As to the second rationale, his lack of leadership potential, Alim points to alleged examples of leadership in different jobs and to his training of another employee at KBR. The examples from different jobs are irrelevant, as they do not speak to his performance at KBR. And the Court determines that evidence that Alim trained a single employee is not probative

ORDER – PAGE 13

of his overall leadership potential. *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason.").

Third, as to the proffered rationale of cost, Alim argues that KBR's policy of paying "non-Anglo and non-American employees much less to perform the exact same job in the exact same location" is discriminatory. Pl.'s Resp. Br. [40], at 36. Alim's argument, though, misses the mark. To violate Title VII, an employer must discriminate against an employee *because of* that employee's membership in a protected class. *See Wesley*, 660 F.3d at 213. Here, any nonlocal worker, of whatever national origin, would have cost KBR more than a local worker. The cost was not tied to any particular national origin; rather, it was tied to whether a worker, at the time he worked for KBR, was an expatriate and thus was more costly to employ. Cost, not national origin, was KBR's sole concern. KBR, therefore, did not discriminate against Alim because of his national origin within the meaning of Title VII.

Alim offers several other reasons he believes KBR's three rationales to be pretextual. First, he alleges that a human resources representative, John Clifton, told Alim to "go back where he came from." The Court addresses this as it relates to an allegedly hostile work environment below. As to the question of discrimination, Clifton was not involved in the decision to terminate Alim's employment. *See* Def.'s App. Supp. Mot. Summ. J. 65. The Court concludes that Alim's evidence of this stray remark is not probative of pretext. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)(citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655–56 (5th Cir. 1996)). Alim also argues that KBR did not validly

discharge Alim under UAE law.  But the Court referred Alim's UAE causes of action to arbitration, and they do not bear on his Title VII claims.  Finally, he indicates that Alim's work history in Baghdad was exemplary and that he was offered the chance to return to Iraq at a lower salary.  Alim's performance in Baghdad, though, does not speak to his performance in Dubai.  Alim, then, has not carried his burden of showing that the reasons KBR listed for his discharge are pretextual.

*5. Conclusion as to Alim's Discrimination Claim.* – Alim has not proved a prima facie case of discrimination.  Moreover, even if he had proved one, KBR has proffered three legitimate, nondiscriminatory rationales for his discharge, and Alim has not shown that they are pretextual or that his national origin was a motiving factor in his discharge.

### C.  Alim Cannot Succeed on His Hostile Work Environment Claim

*1. Standard of Review for Hostile Work Environment Claims.* – To establish a hostile work environment claim under Title VII, a plaintiff must prove that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on national origin; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.  *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) *cert. denied*, No. 11-1361, 2012 WL 1657214 (U.S. Oct. 1, 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

*2. Alim Cannot Establish That the Harassment Affected a Term, Condition, or Privilege of Employment.* – Alim's claim fails because the harassment he complains of does

not support a hostile work environment claim. His claim is based on two incidents. First, he points to a single instance during Ramadan, when Alim, a practicing Muslim, was fasting. According to Alim, three KBR employees described to Alim the food they had eaten for lunch and how delicious it was.[5] Pl.'s App. Supp. Resp. Mot. Summ. J. [41-1] 57. Second, he alleges that Clifton told him to "go back where you came from." *Id.* at 164.

Harassment affects a term, condition, or privilege of employment only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993)). Courts cannot look to the incidents of alleged harassment in isolation; rather, they must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (quoting *Harris*, 510 U.S. at 23). The "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee[]" does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, (1986)) (internal citation omitted). Rather, Title VII bars only conduct that is both subjectively and objectively hostile. *Id.*

---

[5]The Court questions whether this is properly characterized as harassment on the basis of national origin, as opposed to on the basis of religion. In any event, as discussed below, it is insufficient under any analysis to create a hostile work environment, even in light of Clifton's comment addressed below.

In this case, the harassment Alim suffered was not sufficiently severe or pervasive to alter the conditions of his employment. As to the comments during Ramadan, they occurred on only one occasion, were not physically threatening or humiliating, and did not interfere with Alim's work. In fact, he himself admitted that he took the comments of at least one employee as a joke and that the comments made him only "a little bit upset." Pl.'s App. Supp. Resp. Mot. Summ. J. 57. Regarding Clifton's comment, Clifton himself has admitted that his choice of words was unfortunate. He does not remember the specific instance in question, but he has testified that he used this phrase on more than one occasion as a way of telling expatriate employees that working overseas was their choice and that, if they did not like it, they should return to their homes – whether those homes were "India" or "Oklahoma City." Def.'s App. Supp. Mot. Summ. J. 74. The Court agrees that Clifton chose his words poorly and that they were insensitive. Indeed, Alim may have experienced them as subjectively humiliating. Nevertheless, like the Ramadan comments, Clifton used these words only once, they were not threatening, and they did not interfere with Alim's work. Taking both instances into account, the Court concludes that Alim has not pointed to sufficient harassment to support a hostile work environment claim. *See, e.g.*, *White v. Gov't Employees Ins. Co.*, 457 F. App'x 374, 380–81 (5th Cir. 2012) (unpub.) (finding race-based incidents including use of terms "nigger," "ghetto," and "FEMA trailer," while "racially inappropriate," insufficient to state claim of hostile work environment); *Carter v. Luminant Power Services Co.*, No. 3:10-CV-1486-L, 2011 WL 6090700, at *29–30 (N.D. Tex. Dec.

6, 2011) (holding six incidents of race-based conduct over eighteen months, including discovery of noose in workplace, insufficient to implicate Title VII).

Alim, then, has not established a required element of a prima facie case for a hostile work environment claim. KBR is therefore entitled to summary judgment on this claim.

### D. *Alim's Retaliation Claim Also Fails*

***1. Standard of Review for Retaliation Claims.*** – The *McDonnell Douglas* framework governs retaliation claims. A plaintiff establishes a prima facie retaliation case by showing that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse employment action. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008). If the plaintiff is successful in presenting a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996) (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)). If the defendant proffers such a reason, "the fact-finder must decide whether retaliation was the but-for cause for the employer's action." *Hernandez*, 670 F.3d at 657 (quoting *Long*, 88 F.3d at 305 n.4). This means that "a plaintiff may avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'" *Id.* at 660 (citing *Long*, 88 F.3d at 308).

***2. Alim Has Not Stated a Prima Facie Case.*** – Alim's prima facie case is deficient because he has not demonstrated that he engaged in a protected activity. An employee engages in a protected activity when he or she has (1) "opposed any practice made an

unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. *See also Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–28 (5th Cir. 2000). A complaint about an employment situation that is unrelated to the protections afforded by Title VII is not a protected activity. *See, e.g.*, *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (unpub.) (holding that plaintiff was not engaged in protected activity where "his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII"); *Winchester v. Galveston Yacht Basin*, 943 F. Supp. 776, 781 (S.D. Tex. 1996), *aff'd*, 119 F.3d 1 (5th Cir. 1997) (finding plaintiff's complaint to employer about her salary unrelated to her gender and thus not protected activity).

Alim claims to have made several complaints to his superiors about what he considered to be unfair work assignments. He now asserts that he intended these complaints to refer to discrimination based on national origin. Def.'s App. Supp. Mot. Summ. J. 23. At the arbitration, Alim initially testified that, "[i]f I'm not mistaken, I did bring it to [KBR's] attention" that his complaints about work assignments were based on his national origin. KBR's attorney then confronted him with his previous testimony that he had not raised that issue, and Alim then admitted that he had not alerted KBR to his allegations of national origin discrimination. *Id.* at 23–24. Such a complaint does not amount to protected activity. *See Riley v. Napolitano*, No. 13-30088, 2013 WL 3820624, at *2 (5th Cir. July 24, 2013) (unpub.) (finding no protected activity where plaintiff "admit[ted] his e-mail did not

complain of mistreatment based on a protected status such as gender, age, or race"). He also testified that he raised the issue of national origin discrimination for the first time after he became aware of KBR's decision not to renew his contract.[6] Def.'s App. Supp. Mot. Summ. J. 24. Alim, then, has not proved that he engaged in a protected activity.

In sum, Alim has thus failed to prove a prima facie case of retaliation, so KBR is entitled to summary judgment on Alim's retaliation claim.

### CONCLUSION

For the reasons set out above, the Court denies Alim's motion to vacate the JAMS Award and grants KBR's motion for summary judgment.

Signed September 11, 2013.

 David C. Godbey
 United States District Judge

---

[6] To the extent Alim alleges retaliation based on this protected activity, his claim fails because he cannot establish a causal connection between the activity and the adverse employment action – termination – because that action had already occurred.